UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Swift,

    Plaintiff,

v.                                       **MEMORANDUM OPINION AND ORDER**
                                            Civil No. 10-3152

Union Pacific Railroad Co.,

    Defendant.

_____

    Wayne Kenas, Kenas Law Firm Ltd., Counsel for Plaintiff.

    Barbara Jean D'Aquila and Andre Hanson, Fulbright & Jaworski L.L.P., Counsel for Defendant.

_____

This matter is before the Court on the parties' cross motions for summary judgment.

**Factual Background**

Plaintiff was employed with Defendant Union Pacific Railroad Co. ("UP") from November 2000 to July 1, 2008 as a Through Freight Conductor. He was terminated from employment when he refused to submit to a drug and alcohol test on January 29, 2008. Plaintiff alleges that he did not report for the drug test in St. James, Minnesota as requested by UP, because he was in his home town of

1

Sioux City, Iowa on that date, and that severe weather conditions and the premature birth of a grandchild prevented him from making the trip. UP suspended Plaintiff in February 2008 pending an investigation. Following this investigation and a hearing, UP terminated his employment on July 1, 2008.

Plaintiff filed a timely grievance that was submitted to binding arbitration before the Public Law Board ("PLB"). On January 14, 2010, the PLB found that Plaintiff should be reinstated with seniority unimpaired and that Plaintiff should be paid for all time lost. (Amended Complaint, Exhibit A.) The PLB also ordered UP to comply with the Award within thirty days from its date. (Id.) The Award further provided "Before going back to work the Claimant must be cleared by the Carrier's EAP." (Id.) Plaintiff alleges that UP did not comply with the Award by reinstating Plaintiff or by paying him for lost time, nor did UP appeal or collaterally attack the Award.

By this action, Plaintiff seeks enforcement of the Award and seeks damages due to UP's violations of the Minnesota Drug and Alcohol Testing in the Workplace ("DATWA"), Minn. Stat. § 181.950.

**Standard for Summary Judgment**

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

### A.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff brings a motion for partial summary judgment, asking that the Court enter judgment with regard to his entitlement to back pay for all time lost. Plaintiff asserts that pursuant to 45 U.S.C. § 153 (p),

> If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed

in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States.  If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.  The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

Plaintiff asserts the time lost is quantifiable by calculating the amount of Plaintiff's lost income from the time of his wrongful discharge, less the amount of any other income since January 29, 2008.  Plaintiff further asserts he is entitled to judgment in the amount of $125,486, calculated as follows: pre-termination earnings for 2007 are $64,078, which averages to $5,340 per month.  Using this average, Plaintiff's lost income for the period January 30, 2008 through January 14, 2010 (date of the Award) is $125,386.  Plaintiff asserts this calculation includes the amount of income he received as disability income and annuity payments from the Railroad Retirement Board since the date he was suspended.  Plaintiff

acknowledges that he will be obligated to reimburse the RRB from any judgment for time lost, which amounts to $52,687 through January 14, 2010.

UP responds that Plaintiff is not entitled to partial summary judgment on his request for judgment on lost income because such claim was not ripe when this action was filed. The applicable collective bargaining agreement ("CBA") provided that awards for lost income are calculated by offsetting outside earnings. (Gassaway Decl., Ex. 23 (Art. IV, Discipline Agreement, Section IX - Calculation of Lost Income).) Plaintiff had the burden of producing such information to UP upon UP's request. (Id.) In a letter dated June 10, 2010, UP requested such information from Plaintiff. (Id., Ex. 24.) Plaintiff did not provide such information. (Cox Decl. ¶ 5.) Instead, he filed this action on July 28, 2010[1].

Ripeness is determined at the time the lawsuit was filed. Sierra Club v. U.S. Army of Engineers, 446 F.3d 808, 814 (8th Cir. 2006). If the suit is not ripe at the time it is filed, it must be dismissed. Missouri Soybean Ass'n v. U.S. Envir. Prot. Agency, 289 F.3d 509, 513 (8th Cir. 2002). Because Plaintiff does not dispute that at the time this action was filed, he had not provided UP the information

---

[1] The Court notes that the request to enforce the Award was not included in the original complaint. Rather, it was added to the Amended Complaint filed on February 16, 2011. [Doc. No. 21]

necessary to determine the amount of his lost income award, the claim must be dismissed without prejudice. Plaintiff's motion for partial summary judgment must therefore be denied.

### B. UP's Motion for Summary Judgment

#### 1. Count Two - Violation of DATWA, Minn. Stat. § 181.950

UP asserts that in 2006, Plaintiff voluntarily referred himself to UP's Employee Assistance Program ("EAP"), and began his fifth chemical dependency program in September 2006.[2] Thereafter, UP gave Plaintiff time off in order to complete treatment. (Gassaway Decl., Ex. 5 (UPRR-Swift-SMJ-063-64).) As part of his "Return to Work" testing protocol, UP's EAP recommended a follow-up testing plan of eight tests in each of years one and two and six tests in year three. (Id., Ex. 10 (Follow Up Testing Plan at UPRR-Swift-SMJ-067-68).) Plaintiff passed his first Return to Work test, and was issued a Return to Service letter on November 22, 2006. (Id., Ex. 12.)

In accordance with Plaintiff's follow up testing plan, Plaintiff was tested six times between November 18, 2006 and the end of 2007. (Id. Ex. 13.) On January 29, 2008, Plaintiff was on call and subject to an immediate return to duty

---

[2]Plaintiff has been battling alcoholism for over twenty years.

6

directive. On that day, he was not called into service, but was contacted by phone and instructed to report for a follow up drug test. Plaintiff refused to do so. Plaintiff was thereafter placed on suspension for failing to test.

On February 22, 2006, UP issued an Investigation Notice. A hearing was thereafter held on June 24, 2008. Following the hearing, Plaintiff was terminated, effective July 1, 2008. (Gassaway Decl., Ex. 16.)

In his Amended Complaint, Plaintiff alleges that UP's drug and alcohol testing policies "exceed the conditions, terms and standards of federal law", "does not contain minimum standards required under Minnesota Stat. § 181.950" and "contains provisions requiring testing under circumstances that are not allowed by DATWA." (Am. Comp. ¶ 7(a), (b) and (c).)

UP argues that it is entitled to summary judgment on this claim, as it is preempted by federal law. The Railway Safety Act provides that any laws, regulations and orders related to railroad safety shall be nationally uniform to the extent practicable. 49 U.S.C. § 20106 (a)(1). Further,

> A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation,

7

or order related to railroad safety or security when the law, regulation, or order--

    (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

    (B) is not incompatible with a law, regulation, or order of the United States Government; and

    (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (a)(2).

UP is required by federal law to conduct drug and alcohol tests of covered employees. See 49 CFR Part 219; 49 CFR Part 40 and 49 CFR Part 382. A covered employee is one who "has been assigned to perform service in the United States subject to the hours of service laws (49 U.S.C. ch. 211) during a duty tour, whether or not the person has performed or is currently performing such service, and any person who performs such service." 49 CFR § 219.5. See also Hours of Service Act, 49 U.S.C. §§ 21101-21109 (limiting hours of service of train employees, and defining train employees as "an individual engaged in or connected with the movement of a train, including a hostler").

As a freight conductor, Plaintiff's duties included the supervision of the operation and administration of the train. (Gassaway Decl., Ex. 2 (General Code of Operating Rules).) Further "[a]ll persons employed on the train must obey the

conductor's instructions, unless the instructions endanger the train's safety or violate the rules." Id. "Freight conductors are responsible for the freight carried by their train." Id. Given his duties, UP asserts that Plaintiff was a covered employee, subject to its drug and alcohol testing policy ("Policy"). (Lyon Decl., Ex. A (Policy).) Pursuant to the Policy, a covered employee is deemed to have consented to drug testing as required and that consent is implied by performance of such service. (Id. § 4.1.1.) Employees are notified they "are subject to reasonable cause and reasonable suspicion testing," and that "[t]esting may be performed under FRA Authority, FMCSA authority, or company authority, as applicable." (Id. § 4.2.1.) These regulations also provide that

> (a) Under section 20106 of title 49, United States Code, issuance of the regulations in this part preempts any State law, rule, regulation, order or standard covering the same subject matter, except a provision directed at a local hazard that is consistent with this part and that does not impose an undue burden on interstate commerce.
>
> (b) FRA does not intend by issuance of the regulations in this part to preempt provisions of State criminal law that impose sanctions for reckless conduct that leads to actual loss of life, injury or damage to property, whether such provisions apply specifically to railroad employees or generally to the public at large.

49 CFR § 219.13.

A regulation covers the same subject matter of state law where "they

comprise, include, or embrace that concern in an effective scope of treatment or operation.  The [federal regulation] must 'substantially subsume the subject matter of the relevant state law,' not merely 'touch upon' or 'relate to' that subject matter." BNSF Ry. Co. v. Swanson, 533  F.3d 618, 621 (8th Cir. 2008) (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).

The Eighth Circuit has also touched on the subject of preemptive scope of the Railway Safety Act in Chapman v. LabOne, 390 F.3d 620 (8th Cir. 2004).  In Chapman, the plaintiffs were two former employees of UP who were terminated after a private lab reported that urine submitted for testing was not consistent with human urine.  One plaintiff sued UP and the lab, while the other sued the lab only.  The district court dismissed all claims.  On appeal, the Eighth Circuit noted that common law claims against a non-employer lab were not preempted, but noted "[a]fter observing that "some states have enacted laws which limit or regulate drug testing by private employers," the FRA explained that "issuance of this random drug testing rule will preempt any state legislation regarding random drug testing for railroad employees, whether or not inconsistent with the final rule." Id. (citing 53 Fed.Reg. at 47,122).

UP asserts that DATWA and the DOT regulations cited above clearly cover

the same subject matter - drug and alcohol testing of railroad employees. The federal regulations promote safety by mandating drug testing, while DATWA imposes barriers to such testing. For example, DATWA provides that "Employers do not have a legal duty to request or require an employee or job applicant to undergo drug or alcohol testing, and prohibits random drug testing unless the employee is a professional athlete and is subject to a collective bargaining agreement permitting such testing. Minn. Stat. § 181.951 subd. 4 (1) and (2). The federal regulations, however, mandate ongoing random drug testing, as well as for cause testing, of all covered employees. 49 CFR § 219.300 and 219.601. If UP were required to comply with DATWA, it would be exposed to substantial fines. See 49 CFR § 219.9 (a).

Plaintiff responds that his DATWA claim is not preempted because he was not a covered employee when he was called for the drug test on January 29, 2008. He was not on duty, and was at home in Sioux City, Iowa. Minnesota courts have held that with regard to a non-covered employee, DATWA is not preempted by federal law. Follmer v. Duluth Missabe and Iron Range Railway Co., 585 N.W.2d 87 (Minn. Ct. App. 1988).

Plaintiff further argues the federal regulations do not cover an employee

that is in standby status. The definition of "covered employee" incorporates a reference to the Hours of Service laws, 49 U.S.C. § 21101 et seq. These laws were adopted as part of the regulatory oversight of railroads based on safety considerations, and provide that employees who have performed a service minimum are guaranteed an uninterrupted rest period[3]. It is Plaintiff's position that time of covered service, as contemplated by the Hours of Service laws, begins the moment an employee is ordered to report for duty. (citing to Federal Register, Vol. 74, No. 122, June 26, 2003). Plaintiff notes that 49 CFR § 219.101 (a)(1) provides that alcohol and drug use is prohibited while the employee "is assigned by a railroad to perform covered service." Further, § 219.101 provides that no employee may use alcohol within four hours of reporting for service or after receiving notice to report for covered services. Plaintiff argues that these regulations are meant to provide employees a "sphere of privacy" and that no drug testing should be ordered during such time.

The Court must reject Plaintiff's argument. The regulations specifically provide that an employee is a covered employee "whether or not [he] has performed or is currently performing such service." 49 CFR § 219.5. Plaintiff

---

[3] Plaintiff does not contend, however, that on January 29, 2008, he was on a guaranteed minimum rest period. (Pl. Brief, p. 9 n. 2.)

does not cite to any authority to support his position that the federal regulations concerning drug and alcohol testing do not apply when an otherwise covered employee is on call, but not called to duty. The <u>Follmer</u> case, cited by Plaintiff, is inapposite as the plaintiff was a full-time track laborer, therefore not a covered employee. Because her position did not fall within the "covered employee" category of workers subject to the Hours of Service Act, the federal regulations concerning drug and alcohol testing were held not to apply. <u>Id.</u> 585 N.W.23d at 91. Here, there is no dispute that Plaintiff's position as a freight conductor does fall within the "covered employee" category subject to the Hours of Service Act.

The Court finds that federal law does preempt Plaintiff's claim under DATWA, therefore such claim must be dismissed.

### 2. Count One - Enforcement of Award

UP argues that prior to reinstatement, Plaintiff was to be cleared by UP's EAP. UP asserts that Plaintiff did not obtain such clearance. In response, Plaintiff asserts this is a jury question, but did not provide any evidence to raise a genuine issue of material fact that he was cleared, or attempted to attain such clearance. To properly oppose summary judgment on this issue, however, the burden was on Plaintiff to put forth some evidence that he attempted to obtain

13

EAP clearance or that he was, in fact, cleared to return to work.  Having failed to do so, Plaintiff's claim to reinstatement is not yet ripe, and UP is entitled to summary judgment.

**IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 40] is DENIED; and

2. Defendant's Motion for Summary Judgment [Doc. No. 28] is GRANTED.  Count One is dismissed without prejudice, and Count Two is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:   November 18, 2011

                                            s/ Michael J. Davis
                                            Michael J. Davis
                                            Chief Judge
                                            United States District Court